THELMA ROPER, Plaintiff-Appellant, *v.* MARY K. MARKLE, Defendant-Appellee.

Fifth District   No. 76-493

Opinion filed April 19, 1978.

David J. Letvin, of Cohn, Carr, Korein, Kunin and Brennan, of East St. Louis, for appellant.

George C. Lackey, of Lackey & Lackey, of Centralia, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff, Thelma Roper, appeals from a judgment of the circuit court of Marion County dismissing her medical malpractice complaint on the

basis that the cause was barred by the statute of limitations (Ill. Rev. Stat. 1975, ch. 83, par. 22.1).

On May 27, 1976, plaintiff filed a complaint alleging that she was injured as a result of negligence on the part of defendant, Dr. Mary K. Markle. After a hearing, defendant's motion to dismiss the complaint was allowed, and plaintiff Roper was given 20 days in which to plead anew. An amended complaint was filed on June 22, 1976. The defendant Markle again moved to dismiss, asserting, *inter alia*, that the complaint was barred under section 14 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 15) since it was not filed within two years after the cause of action accrued. On October 26, 1976, the court granted the motion, stating: "It appears from the complaint that this action is instituted more than two years after the occurrence of the plaintiff's injury." This appeal followed.

The question which we are called upon to answer is whether the limitations period's "discovery rule" applicable to medical malpractice cases tolls the running of the statutory time period until such time as the potential plaintiff knew or should have known both that he has a physical injury and that it may be a result of someone's negligence. The defendant asserts that in all cases the statute is tolled only until such time as plaintiff knew or should have known of the injury in the sense that he knew or should have known of the existence of a physical problem.

The basic allegations contained in the amended complaint, which for our purposes must be taken as true, may be summarized as follows.

Plaintiff Roper, a patient of the defendant doctor, consulted with her about the necessity of a hysterectomy. On or about April 7, 1972, Dr. Markle performed a wide cuff abdominal hysterectomy on plaintiff. As a result of defendant's negligence in performing this operation and/or in following up on it, urine leaked out of the plaintiff's ureter causing one of her kidneys to become so infected and inflamed as to necessitate its surgical removal on May 9, 1972. Plaintiff neither learned nor reasonably should have learned of the cause of this condition until on or about September 1, 1974.

Plaintiff's reply brief reveals that had this cause proceeded to trial, the significance of September 1, 1974, would have been shown by proof that on or about that date plaintiff first learned of the cause of her second operation as a result of an examination made by a urologist at Washington University Medical School.

A statute of limitations is a designated period of time during which a cause of action must be brought or forever barred. (*Lincoln-Way Community High School District 210 v. Village of Frankfort*, 51 Ill. App. 3d 602, 367 N.E.2d 318.) Before courts and legislatures began applying a discovery rule to limitations periods, the statute ran from the time that the last act giving rise to a cause of action occurred. (*Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432, 435, 176 N.E.2d 761,

763; *Myers v. Green*, 5 Ill. App. 3d 816, 817-18, 284 N.E. 349, 350.) In other words, the time period during which the suit must be brought began when all of the elements of the tort action were present, including a legal duty, breach of that duty, and injury resulting from such breach. *Coumoulas v. Service Gas, Inc.*, 10 Ill. App. 3d 273, 274, 293 N.E.2d 187, 188.

This is admittedly a harsh rule. It operates unfairly in situations where the plaintiff, regardless of diligence, is unable to discover that he has been injured until after the limitations period has passed. (*Lincoln-Way Community High School District 210 v. Village of Frankfort*, 51 Ill. App. 3d 602, 608, 367 N.E.2d 318, 323.) Simply stated, the limitations period was not tolled by the wronged party's lack of knowledge or complete ignorance of a tort-feasor's negligence or other culpable act. Scott, *For Whom the Time Tolls—Time of Discovery and the Statute of Limitations*, 64 Ill.B.J. 326 (1976); *e.g., Simoniz Co. v. J. Emil Anderson & Sons, Inc.*, 81 Ill. App. 2d 428, 436, 225 N.E.2d 161, 165; *Mosby v. Michael Reese Hospital*, 49 Ill. App. 2d 336, 339, 199 N.E.2d 633, 635.

■■ Since 1965 the harshness of this rule has been ameliorated by the application of a so-called discovery rule to various types of cases. In most instances the application has been by a process of judicial interpretation. The essence of the discovery rule is that the limitations period begins to run not when the last act giving rise to a cause of action has occurred but when the plaintiff knew or should have known that he was "injured."

The primary area in which adoption of the discovery rule has been legislative in nature is that of medical malpractice. By virtue of legislation in 1965, section 21.1 of the Limitations Act (Ill. Rev. Stat. 1965, ch. 83, par. 22.1) was added. Section 21.1 then applied only to "foreign substance" cases. It provided that as to a patient in whom a foreign substance was negligently permitted to remain after treatment, causing injury, the period of limitations for filing an action did not begin until the person knew or should have known of the facts of hurt and damage to his body.

The current section 21.1 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 22.1) applies to all varieties of medical malpractice and read in pertinent part at the time this action was commenced as follows:

> "No action for damages for injury * * * against any physician * * * duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known * * * of the existence of the injury * * * for which damages are sought in the action, whichever of such date [*sic*] occurs first, but in no event shall such action be brought more than 5 years after the date on which occurred the act or omission or

occurrence alleged in such action to have been the cause of such injury * * *."

We note at the outset that the language of the trial court's finding with respect to the triggering event of the limitations period, *i.e.*, "the occurrence of the plaintiff's injury," is overly broad. A literal reading of it would only be consistent with the prediscovery rule that the occurrence of the last act giving rise to a cause of action starts the running of the limitations period. We take the court's finding to be that the instant action is barred because not pursued within two years of the time the plaintiff knew she had an infection of the kidney which required the organ's removal, or early May 1972.

It is plaintiff's contention that the discovery rule requires that the limitation period be computed from the time when she knew or should have known that her kidney's damaged condition resulted from defendant's negligence rather than from some nonnegligent cause.

The legislature's adoption of a discovery rule limitations statute which applies to all medical malpractice cases was prompted by our supreme court's decision in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450.

In *Lipsey* the court was confronted with a malpractice case of a type other than the foreign substance variety, namely faulty diagnosis. It was therefore not governed by the version of section 21.1 of the Limitations Act (Ill. Rev. Stat. 1969, ch. 63, par. 22.1) then in effect but by the general personal injuries provision, section 14 (Ill. Rev. Stat. 1969, ch. 83, par. 15), which directs that actions be commenced within two years of their accrual. No general malpractice statute of limitations was in effect until November 11, 1975.

The facts of *Lipsey* were that the plaintiff consulted Dr. Menaker, a defendant, about a lump on her arm in late 1963. The lump was thereafter excised by this doctor at the defendant hospital. A biopsy report, issued subsequent to testing by the Hospital's pathology department, indicated that the tumor was not malignant. In 1966, plaintiff complained again to Dr. Menaker about a lump under her arm. In April of that year, she entered the defendant hospital and Dr. Menaker removed several enlarged lymph nodes from under plaintiff's arm, as well as a lesion from her left breast. This time the Hospital's report disclosed a malignancy in both areas. Further surgery was apparently necessary. Plaintiff chose to have it performed later that month in a New York hospital by a different doctor. This surgery was radical in nature, involving removal of her left breast, shoulder and arm. A frozen section of the lump removed in 1963 was examined at the New York hospital and pronounced malignant, revealing the error made in the biopsy of 1963.

The plaintiff brought an action for damages in December of 1966 based

on this misdiagnosis of a cancerous condition as noncancerous in nature. The trial court granted a motion for summary judgment in favor of defendants and dismissed the complaint on the grounds that suit had not been instituted within two years after the cause of action accrued. An appeal was taken directly to our supreme court.

The supreme court framed the issue as whether the two-year period of limitations for tort actions (Ill. Rev. Stat. 1969, ch. 83, par. 15) "began to run in October of 1963 at the time of the plaintiff's first surgery and the alleged negligence, or at the time that the plaintiff *discovered her true condition or should have known of it and the defendants' claimed negligence.*" (Emphasis added.) (46 Ill. 2d 32, 37, 262 N.E.2d 450, 453.) The court noted that if the latter standard should have been applied by the trial court the dismissal was improper.

After careful consideration the supreme court concluded that the court had erred in dismissing the cause; however, its holding was not patterned after the language used to define the issue but was stated in the following manner:

> "We extend the rule of time of discovery followed by us in *Rozny* [*v. Marnul*, 43 Ill. 2d 54, 250 N.E.2d 656] and hold that, in medical malpractice cases as this, the cause of action accrues when the person injured learns of his injury or should reasonably have learned of it." (46 Ill. 2d 32, 40, 262 N.E.2d 450, 455.)

The court went on to state that:

> "It is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists. This is true whether the malpractice consists of leaving a foreign object in the body or whether it consists of faulty diagnosis or treatment." 46 Ill. 2d 32, 41, 262 N.E.2d 450, 455.

In view of the court's phrasing of the issue and avowed concern that negligently injured plaintiff's actions not be barred before they have an opportunity to realize that one exists, it is our conclusion that any support which *Lipsey*'s phrase, "learns of the injury" lends to the interpretation advanced by defendant that knowledge of the existence of a physical problem is the triggering event *in all cases* for the running of the limitations period was unintentional. The phrase was intended to express that the statute begins to run when there is a concurrence of the actual or constructive knowledge of both the physical problem and the possiblity that someone is at fault for its existence. The current statutory language of section 21.1 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 22.1), quoted above, was patterned. after *Lipsey* and must be construed as expressing this same concept.

The imprecision and ambiguity of the phrase used in *Lipsey* was a direct result of the factual situation presented there. In *Lipsey* the

discovery that the original biopsy was in error and that a cancerous condition had been allowed to develop without careful monitoring were nearly simultaneous. There was no need to be more explicit as to the holding or to phrase it in a manner which would be easily applied to totally dissimilar factual situations.

The situation presented in *Lipsey* is similar to that in traumatic injury and foreign substances malpractice cases. In traumatic injury cases, that is, where the damage is caused by external violence (see Black's Law Dictionary (rev. 4th ed. 1968), "Trauma", "Traumatic"), it has been recognized that the time when a plaintiff knows or should have known of his right to sue is when he is injured. (*E.g., Williams v. Brown Manufacturing Co.*, 45 Ill. 2d 418, 261 N.E.2d 305; *Berry v. G. D. Searle & Co.*, 56 Ill. 2d 548, 309 N.E.2d 550.) Foreign substance medical malpractice cases are similar to trauma cases in that the time when a plaintiff discovers the injury—the substance left behind—is obviously also the time when he knows or should have known both that he has been injured and that the injury is the result of another's negligence.

That in some types of cases an awareness of a physical problem also carries with it awareness of its wrongful causation, does not dictate a triggering of the limitations period in all malpractice cases when one becomes aware solely of a physical problem.

We note that a different rule has been recognized as applicable when the injury involved is of a type which does not immediately put one on notice of its origination by negligent means. For example, in the chemical cases, *Wigginton v. Reichold Chemicals, Inc.*, 133 Ill. App. 2d 776, 274 N.E.2d 118, and *McDonald v. Reichold Chemicals, Inc.*, 133 Ill. App. 2d 780, 274 N.E.2d 121, the plaintiffs developed illnesses of their respiratory systems but were unaware that the illness was caused by their exposure to defendant's product rather than some nonnegligent cause until some time later. The court stated the rule applicable to be:

> "In cases involving a disease resulting from neglect, negligence or a defective product we believe that the more logical and tenable position is that the cause of action accrues and the statute of limitation begins to run when the diseased party discovered or should have discovered that he is ill as the result of some neglect on the part of another party or as the result of being wrongfully exposed to a defective product. [Citations.]"

We take note that the court indicated in both cases that it was applying the time of discovery rule as had been done in medical malpractice cases, citing *Lipsey* and section 21.1 of the Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 22.1).

We believe the instant type of malpractice case is more analogous to the nontrauma cases than to trauma or foreign substance cases.

Here the removal of plaintiff's kidney was not caused by a known wound or external injury but by infection, allegedly resulting from defendant's negligence in performing the hysterectomy or in following up on the operation. It was therefore not traumatic in nature. Like the diseased condition of the chemical plant workers' lungs, presumed to be nonnegligently produced, so too was the instant kidney's condition presumed to be organically and nonnegligently caused.

The plaintiff neither knew nor should have known that she had a right to sue when her kidney was removed since a reasonable person would have no reason at that time to believe its removal was necessitated by the negligence of defendant in performing the hysterectomy rather than by some nonnegligent organic cause. There was an implicit inequality of knowledge between plaintiff and defendant at that time. It is not until such time as plaintiff discovered or should have discovered that she was injured by defendant's conduct that she should be imputed with knowledge of her right to a cause of action.

The present difference in opinion as to what time the limitations period should be computed from is deeply rooted in semantics. On first glance the position advanced by defendant appears correct when one examines solely the language of section 21.1 of the Limitations Act and the holding in *Lipsey*. However, a fuller view as to what the essence of the discovery rule for limitations periods consists of is obtained when one examines the various expressions of the relevant "discovery" or knowledge of the plaintiff found in the cases since 1969 which have applied the rule to types of cases other than medical malpractice.

A convenient starting point is *Rozny v. Marnul*, 43 Ill. 2d 54, 250 N.E.2d 656, a case dealing with misrepresentation by a surveyor. The supreme court in *Lipsey* expressly stated that it was extending the rule followed by the court in *Rozny* to the case at hand. The *Rozny* court held that the cause of action accrued when the plaintiffs "knew or should have known of the defendant's error." (43 Ill. 2d 54, 72-73, 250 N.E.2d 656, 665-66.) The court also stated that "where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue." 43 Ill. 2d 54, 70, 250 N.E.2d 656, 664.

The relevant time has also been stated in the following manner: "[when] the client discovers, or should discover, the facts establishing the elements of his cause of action." (*Kohler v. Woollen, Brown & Hawkins*, 15 Ill. App. 3d 455, 460, 304 N.E.2d 677, 680 (legal malpractice).) As is apparent from our discussion of the defective products cases, *Wigginton* and *McDonald*, the court in *Wigginton* held that where there was no trauma, the statute of limitations begins to run at the time the plaintiff

discovered or should have discovered he was injured by the defendant's conduct.

In all probability, these variations in language were the result of the differing amounts of precision necessary to cover the facts of each case. As we have already noted, the present section 21.1 of the Limitations Act reflects the language of *Lipsey* in speaking of when a plaintiff knew or should have known of the existence of the injury rather than of his right to sue, or of facts establishing the elements of a cause of action, or that he was injured by the defendant's conduct. Had terminology such as right to sue been placed in the statute, instead of the present wording, it would be undisputed that plaintiff's complaint was sufficient. It is our belief, however, that all of these phrases reflect the same concept.

■■ As indicated previously, our reading of *Lipsey* convinces us that the terminology of the statute must be interpreted to mean that the limitations period does not begin to run until there exists actual or constructive knowledge of both a physical problem and that someone is or may be at fault for its existence.

The historical and practice note to now repealed section 58.2 of the Civil Practice Act (Ill. Ann. Stat., ch. 110, par. 58.2, Historical and Practice Note, at 78 (Smith-Hurd Supp. 1978))asserts that the statute (Ill. Rev. Stat. 1975, ch. 83, par. 22.1) did not directly address the situation in which the claimant does not learn of the cause of the injury until considerably after he learns of the injury itself. This may account for the relative ease with which the limitations section may be applied to traumatic or foreign substance malpractice cases as compared to subtle or unusual cases such as we deal with here.

The 1975 medical malpractice amendment to the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 22.1) was obviously intended to apply to all types of malpractice cases and to operate in favor of plaintiffs who were reasonably unaware of their right to sue. Any interpretation of the limitations statute other than the one we have adopted would result in the perpetuation of unfair results; results which we are confident were not intended by the legislature.

There are other considerations which support our interpretation. The term "injury" itself denotes that damage has been done to one by another. (See Black's Law Dictionary (rev. 4th ed. 1968), "Injury" and "Personal Injury".) Consequently, in cases where the injury manifests itself at one time but there is no reason to know that the injury was caused by another until a later time, the later time starts the statute's running since it reflects the date on which the claimant knew or should have known of the "injury."

Such an interpretation is consistent with the purpose of statutes of limitations. Their purpose is not to shield a wrongdoer but rather to

discourage the presentation of stale claims and to encourage diligence in the bringing of actions. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 334 N.E.2d 160.

Until such time as a plaintiff knew or should have known that a condition, seemingly innocent in causation, was perhaps the result of another's act which may have been negligent, he has had no opportunity to discover that a cause of action exists (*Lipsey*, 46 Ill. 2d 32, 40, 262 N.E.2d 450, 455) or to be less than diligent in pursuing it in court. It would be both unrealistic and unfair to bar a cause of action before such time. In addition, it would not serve to further the purpose of the statute of limitations.

■■ We would note, however, that in any given case, as with this case, whether plaintiff knew or should have known that a condition was the result of the possibly negligent act of another is a question of fact. As such it may be placed in issue in the case for determination by the trier of fact.

Our interpretation of the limitations statute is supported by the case of *Anguiano v. St. James Hospital*, 51 Ill. App. 3d 229, 366 N.E.2d 930.

In *Anguiano*, the plaintiff was injured on October 13, 1967, in an industrial accident which crushed his pelvic area. He was immediately treated by defendant doctors in the defendant hospital. On November 29, 1967, 10 days after his initial discharge from the hospital, plaintiff complained of an inability to urinate. He was hospitalized several times in the next four years to be treated for recurring strictures of his urethra.

In 1968 the plaintiff retained attorneys to represent him in a workmen's compensation proceeding. Later in 1968 and again in 1970, the doctor examining plaintiff for the workmen's compensation claim advised plaintiff to have his urinary problem evaluated by a competent urologist. Plaintiff disregarded this advice. It was not until 1972 that a urologist's report was obtained that concluded that plaintiff was suffering his problem because of the defendant's negligent treatment.

The plaintiff shortly thereafter filed suit but the trial court entered summary judgment in favor of defendants because the action was not commenced within the two-year period of section 14 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 15.).

On review, the appellate court found that the date upon which the plaintiff reasonably should have known of his injury was June 26, 1970, when the doctor advised plaintiff for the second time to have his urinary problem analyzed by a competent urologist. Since the act was not filed within two years of that date, the action was held to have been properly dismissed.

If the court had believed that a mere awareness of a physical problem triggered the running of the statute of limitations, it would not have

selected the date which it did. It was uncontroverted that Anguiano had been aware of his urinary problem since 1967. The date chosen as the starting point, however, reflected the date when plaintiff reasonably should have known that his problem was caused by the defendant's negligence. The court understood *Lipsey* to require either actual or constructive knowledge of both of these elements. See also *Hayes v. Weyrens*, 15 Ill. App. 3d 365, 304 N.E.2d 502, where the court computed the limitations period from the time when plaintiff had concluded the cause of her illness was defendant's product.

We have examined the cases *Ilardi v. Spaccapaniccia*, 53 Ill. App. 3d 933, 369 N.E.2d 144, and *O'Bryant v. Starkman*, 53 Ill. App. 3d 991, 369 N.E.2d 215, which were cited to us as supplemental authority by defendant. We find that they are clearly distinguishable on their facts from our case. To the extent which *Ilardi* indicates that a mere awareness of a physical problem begins the running of the statute in all cases it is improperly decided. In situations where the problem itself would not cause a reasonable person to suspect that its origination is in someone's negligence, the earliest time at which the plaintiff should become so aware commences the statute's running.

■■ In conclusion, we find that the instant case presents a situation where the plaintiff's knowledge that her kidney was in a debilitated condition cannot be said to have imputed to her a knowledge that it was caused by defendant's act which might have been negligent. There is nothing in the pleadings which suggests that she should have reasonably become aware of this causal connection at anytime before she alleges she did. September 1, 1974, appears to be the earliest time at which she should have known that her kidney condition was caused by an act that might be found to be malpractice; fairness requires that the statutory period run from that date. Since her complaint was filed within two years of September 1, 1974, and less than five years from the time of defendant's alleged negligent acts or omissions (Ill. Rev. Stat. 1975, ch. 83, par. 22.1, as amended by P.A. 79-960), the complaint was improperly dismissed.

For the foregoing reasons, the judgment of the circuit court of Marion County is reversed and this cause is remanded for further proceedings.

Reversed and remanded.

G. J. MORAN and KARNS, JJ., concur.