CARYL MARTINEZ *et al.*, Plaintiffs-Appellants, *v.* OSCAR ROSENZWEIG,
M.D., *et al.*, Defendants-Appellees.

First District (5th Division)    No. 78-313

Opinion filed February 23, 1979.—Modified on denial of rehearing April 20, 1979.

Robert S. Fritzshall, of Chicago, for appellants.

Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Robert Marc Chemers and Joseph B. Lederleitner, of counsel), for appellee Oscar Rosenzweig, M.D.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Harry J. O'Kane, William J. Linklater, and Charles B. Lewis, of counsel), for appellee A. H. Robins Company.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs, Mr. and Mrs. Martinez, appeal from an order dismissing their complaint and amended complaint pursuant to section 48(1)(e) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(e)) on the basis that the action was barred by the applicable statute of limitations (Ill. Rev. Stat. 1977, ch. 83, pars. 15, 15.1 and 22.1). The sole issue on appeal is whether plaintiffs' complaint was timely filed. We reverse and remand.

On March 7, 1977, plaintiffs filed a three-count complaint against Dr. Oscar Rosenzweig. They alleged that on or about February 1, 1973, defendant, who specialized in gynecology, inserted a copper intra-uterine device (hereafter I.U.D.) into Mrs. Martinez' uterus as a method of birth control. Several months later, she became pregnant, but on September 12, 1973, the pregnancy was aborted. Mrs. Martinez continued to see defendant intermittently for treatment of abdominal pains and a vaginal infection. She was unaware of her medical condition until July 23, 1975, when another physician surgically removed the I.U.D. from her bladder. In count I she alleged negligence on defendant's part in: (a) failing to determine what happened to the I.U.D.; (b) failing to evaluate her condition; (c) failing to conform to a reasonable standard of care over a 2½-year period; and (d) failing to perform tests necessary to locate the I.U.D. In count II recovery was sought for defendant's negligence under a theory of *res ipsa loquitur*. Count III was brought by Mr. Martinez for loss of consortium.

On July 15, 1977, plaintiffs filed an amended complaint adding three counts against A. H. Robins Company (hereafter Robins), the alleged manufacturer of the I.U.D. in question. In count IV, plaintiffs alleged that Robins was negligent in failing to give defendant-physician or Mrs. Martinez proper instructions on the use of the I.U.D. and specifically for failure to warn Mrs. Martinez that the I.U.D. could readily pass through her body tissue. Count V was brought under the theory of *res ipsa loquitur*, alleging negligent manufacture of the I.U.D. Finally, in count VI, Mr. Martinez sought damages for loss of consortium.

Defendant Robins thereafter moved to dismiss plaintiffs' complaint for failure to file within the period of the statute of limitations. In the alternative, Robins sought to have count V dismissed for failure to state a cause of action under the theory of *res ipsa loquitur* since defendant Robins

did not have exclusive control of the I.U.D. On October 12, 1977, plaintiffs amended their complaint to seek recovery against Robins under strict tort liability also. Dr. Rosenzweig also attempted to have count II dismissed for failure to state a cause of action under *res ipsa loquitur* but the motion was not acted upon.

Dr. Rosenzweig joined in Robins' motion to dismiss the complaint and on October 19, 1977, the trial court granted their motion to dismiss plaintiffs' complaint for failure to comply with the statute of limitations.

On November 3, 1977, plaintiffs filed a petition for rehearing on the dismissal order, accompanied by an affidavit. In the affidavit, Mrs. Martinez stated that after Dr. Rosenzweig had delivered her third child she asked him for a birth control method. She received the I.U.D. manufactured by co-defendant Robins. About six weeks later, Dr. Rosenzweig advised her that she was pregnant. She asked him what had happened to the I.U.D. and he replied that he was not sure, but it probably dropped out or would come out when the baby was born. The plaintiffs assumed this was true. During the ensuing months of treatment including the delivery of the premature fetus, Dr. Rosenzweig never mentioned the I.U.D. and plaintiffs never thought that it was still in Mrs. Martinez' body.

After the miscarriage in September 1973, Mrs. Martinez continued intermittent treatment with Dr. Rosenzweig until July 7, 1975. During this time "she had severe discharges and 'learned to live' with the gnawing pain in her abdomen." Because of a sudden, severe pain in her abdomen, she visited Dr. Rosenzweig on July 7, 1975. When he was unable to diagnose the problem, she consulted another doctor. The second doctor quickly determined that a foreign object was lodged in her abdomen, necessitating the operation of July 23, 1975.

Plaintiffs asserted that the negligence of Dr. Rosenzweig continued until July 7, 1975, their last visit to him. They had no way of knowing the I.U.D. remained in Mrs. Martinez' body while the doctor was treating her. They claimed that Robins' negligence continued until the I.U.D. was removed on July 23, 1975. Until that time, plaintiffs did not and could not have known that the I.U.D. remained in Mrs. Martinez' body.

On November 28, 1977, after a hearing, the trial court affirmed its order dismissing the complaint. This appeal followed.

OPINION

The Limitations Act (Ill. Rev. Stat. 1977, ch. 83, pars. 1 through 12a and 13 through 27) determines the time in which various actions may be brought. Section 21.1 governs medical malpractice claims and provides in pertinent part:

> "No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, whether based

upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." Ill. Rev. Stat. 1977, ch. 83, par. 22.1.

Section 14 governs actions for personal injuries and provides:

"Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, shall be commenced within two years next after the cause of action accrued." Ill. Rev. Stat. 1977, ch. 83, par. 15.

Section 14.1, dealing with actions for loss of consortium, provides:

"Actions for damages for loss of consortium or other actions deriving from injury to the person of another shall be commenced within the same period of time as actions for damages for injury to such other person." Ill. Rev. Stat. 1977, ch. 83, par. 15.1.

Finally, section 15, dealing with other civil actions, provides:

"Except as provided in Section 2—725 of the 'Uniform Commercial Code', approved July 31, 1961, as amended, and Section 11—13 of 'The Illinois Public Aid Code', approved April 11, 1967, as amended, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." Ill. Rev. Stat. 1975, ch. 83, par. 16.

Did plaintiffs bring their action within these time limits? Plaintiffs argue that Mrs. Martinez did not know she was injured nor could she have reasonably discovered the injury until July 23, 1975. Until then, she did not discover that the I.U.D. was inside her or that defendants may have been negligent. In essence, plaintiffs contend that the statute of limitations did not commence until she learned the cause of the discharges and pain, namely defendants' alleged negligence rather than some natural cause. In addition, plaintiffs advance several other arguments to prevent the action from being barred, including equitable estoppel, fraudulent concealment, continuing negligence and continuing treatment.

On the other hand, defendants urge that the miscarriage was a

traumatic event which gave Mrs. Martinez notice of her injury, and that the discharges and "gnawing pain in her abdomen" was further evidence that Mrs. Martinez had discovered the injury, although she did not know the cause. Relying on *Ilardi v. Spaccapaniccia* (1977), 53 Ill. App. 3d 933, 369 N.E.2d 144, *Anguiano v. St. James Hospital* (1977), 51 Ill. App. 3d 229, 366 N.E.2d 930, and several other cases, defendants argue that the statute of limitations begins to run when a person knows of his injury, not when he finds the cause or that it is actionable.

The medical malpractice statute of limitation is the result of the decision in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450. There the court applied the discovery rule to medical malpractice cases. The court held:

> "We extend the rule of time of discovery followed by us in *Rozny* [*v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656] and hold that, in medical malpractice cases as this, the cause of action accrues when the person injured learns of his injury or should reasonably have learned of it." *Lipsey*, at 40.

This court had occasion to apply the discovery rule in *Ilardi v. Spaccapaniccia* (1977), 53 Ill. App. 3d 933, 369 N.E.2d 144. There, plaintiff complained of the alleged negligence of several doctors in operating on her feet. Shortly after the operation, plaintiff developed a separation of the web between the first and third toes of both feet. She continued treatment with one of the doctors who assured her that her feet would heal. However, a separation developed between her first and second toes of both feet. Although she declined the doctor's offer to reoperate, she remained in his care for another year. After consulting several specialists, she apparently learned that the problem was the result of the operating doctors' acts. She argued that the first time she had reasonable grounds to believe that her injury was the result of the operation was some two years and eight months later. She argued that the limitation period began to run from the time she knew or reasonably should have known that her injury was caused by defendants' negligence. In rejecting this argument we said:

> "Contrary to plaintiff's assertion *Lipsey* did not hold that a cause of action in medical malpractice accrues when the person injured learns his injury is actionable. (*Anguiano v. St. James Hospital* (1977), 51 Ill. App. 3d 229, 366 N.E.2d 930.) Rather it held that the cause of action accrues 'when the person injured *learns of his injury* or should reasonably have learned of it.' " (Emphasis in original.) (*Ilardi*, at 934.)

We went on to state:

> "* * * However, because we have held here that the injured party

need only know of her injury—not that it is actionable (*Anguiano v. St. James Hospital* (1977), 51 Ill. App. 3d 229, 366 N.E.2d 930), this contention is also without merit. Regardless of what extenuating circumstances plaintiff may have proved at a hearing (absent allegations of concealment) *it would not change the fact that she became aware of her* injury '[s]hortly after the operation.' It is axiomatic that the constructive knowledge qualification in *Lipsey* applies only if plaintiff lacks actual knowledge of her injury, and cannot be invoked here, where plaintiff is aware of her injury." (Emphasis added.) *Ilardi*, at 935.

Unlike the plaintiff in the present case, Ms. Ilardi knew of the injury to her feet shortly after the operation, more than 3½ years before she brought suit. She admitted that she knew of this in her complaint. Having actual knowledge of the injury she would have reason to know that the operating doctors might be responsible. The statute of limitations began to run with her knowledge of the injury. We do not feel that *Ilardi* is dispositive of the instant case.

In the recent case of *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934, the court discussed the discovery rule and whether the statute of limitations runs when plaintiff is aware of a physical problem alone, or whether there must also be an awareness that it may be the result of someone's negligence. In that case plaintiff alleged that the defendant doctor negligently performed a hysterectomy on April 7, 1972. As a result of the negligence, urine leaked out of plaintiff's ureter causing one of her kidneys to become so infected as to require removal on May 9, 1972. As a result of an examination by a urologist on September 1, 1974, she learned of the cause of the infected kidney, the defendant's alleged negligence. From these facts the court concluded:

"The plaintiff neither knew nor should have known that she had a right to sue when her kidney was removed since a reasonable person would have no reason at that time to believe its removal was necessitated by the negligence of defendant in performing the hysterectomy rather than by some nonnegligent organic cause. There was an implicit inequality of knowledge between plaintiff and defendant at that time. It is not until such time as plaintiff discovered or should have discovered that she was injured by defendant's conduct that she should be imputed with knowledge of her right to a cause of action." *Roper*, at 712.

After reviewing the previous cases and legislation, the court made the following statements:

"As indicated previously, our reading of *Lipsey* convinces us that the terminology of the statute must be interpreted to mean that the limitations period does not begin to run until there exists actual or

constructive knowledge of both a physical problem and that someone is or may be at fault for its existence.

\* \* \*

Until such time as a plaintiff knew or should have known that a condition, seemingly innocent in causation, was perhaps the result of another's act which may have been negligent, he has had no opportunity to discover that a cause of action exists (*Lipsey*, 46 Ill. 2d 32, 40, 262 N.E.2d 450, 455) or to be less than diligent in pursuing it in court. It would be both unrealistic and unfair to bar a cause of action before such time. In addition, it would not serve to further the purpose of the statute of limitations.

We would note, however, that in any given case, as with this case, whether plaintiff knew or should have known that a condition was the result of the possibly negligent act of another is a question of fact. As such it may be placed in issue in the case for determination by the trier of fact.

\* \* \*

\* \* \* In situations where the problem itself would not cause a reasonable person to suspect that its origination is in someone's negligence, the earliest time at which the plaintiff should become so aware commences the statute's running." *Roper*, at 713-15.

We agree that in each case the question of whether a plaintiff knew or should have known of a defendant's negligence is a question of fact. The particular facts of each case would determine whether plaintiff had filed within the discovery rule period. In a case involving an obvious physical harm, plaintiff should reasonably be able to know it was the result of another's act or omission. However, in instances like *Roper* and the present case, the plaintiff may not be able to determine the true nature of his ailment or its cause. To interpret the discovery rule to allow a mere awareness of a physical problem to commence the running of the statute of limitations in all cases, without knowledge that it was possibly the result of another's negligence, would be unfair and unrealistic.

In her complaint Mrs. Martinez alleged that she was unaware of her medical condition until the operation of July 23, 1975. This allegation is supported by the affidavit which states that plaintiffs "had no knowledge or idea, nor could they have known about this device still remaining in Mrs. Martinez' body until the operation of July 23, 1975." Thus, the pain and discharges could be symptomatic of many conditions. They could have been the result of many natural disorders, unrelated to the presence of the I.U.D. Dr. Rosenzweig, who was an expert in gynecology, treated her for the symptoms and failed to diagnose the true nature of the problem. He had told her that the I.U.D. had probably fallen out and had treated her for some period of time without discovering the I.U.D. It would appear

reasonable that Mrs. Martinez did not know or have reason to know the nature of her problem when a gynecologist, who is a specialist in those matters, did not discover it.

■■ To repeat, we hold that section 21.1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 21.1) should be interpreted to mean that the limitations period does not begin to run until plaintiff either knows or has reason to know that he or she has a physical problem and also that someone is or may be responsible for it. Although Mrs. Martinez knew something was wrong with her, she alleges that she did not know the cause or that defendants might be responsible for the harm. Accordingly, the period of limitations may not have commenced until sometime in July of 1975, when she learned of the presence of the I.U.D. and that Dr. Rosenzweig had failed to discover it. In addition, since the last alleged act of negligence of the defendant, Dr. Rosenzweig, occurred within four years prior to the date of suit, the complaint was within the outside limits of the statute of limitations. Ill. Rev. Stat. 1977, ch. 83, par. 22.1.

■■ Mrs. Martinez' action against Robins for personal injury based on negligent manufacture must have been brought "within two years next after the cause of action accrued" (Ill. Rev. Stat. 1977, ch. 83, par. 15) to be timely. The discovery rule determines when a cause of action for personal injury "accrues" under section 14 of the Limitations Act (*Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 40, 262 N.E.2d 450, 455) and specifically in products liability cases. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 432, 261 N.E.2d 305, 313; see also *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 334 N.E.2d 160; *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250.)

Defendant Robins cites *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550, as controlling in the present case insofar as the Martinez' claims against Robins are concerned. In that case plaintiff sued defendant, G. D. Searle & Co., for injuries she allegedly sustained by taking birth control pills manufactured by defendant. The alleged injury was a cerebral vascular stroke on May 30, 1965, which resulted in her permanent partial paralysis. Plaintiff did not bring her action until May 29, 1969. She claimed that she did not know the birth control pills were the cause of her injury until June 1, 1967, and that was the day on which her cause of action accrued. In rejecting plaintiff's argument as to the time her action for strict libility in tort accrued under section 14 of the Limitations Act, the supreme court stated:

> "* * * In *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 432, it was stated, 'we have held that an action to recover for personal injuries resulting from a sudden traumatic event accrues when plaintiff first knew of his right to sue, *i.e., at the time when the*

*injury occurred.* [Citations.] Although we have not specifically held this rule applicable to a products liability claim [citation], refusal to do so would emasculate much of the consumer protection afforded by *Suvada.*' (Emphasis added.) To avoid the possible unfavorable implication of *Williams,* plaintiff relies upon *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 40, in which we held that a cause of action accrues in a medical malpractice case when a person knows or reasonably should know of his injury. See also *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 72.

We find it unnecessary to consider at length plaintiff's contention that her action in strict tort liability accrued on June 1, 1967, as alleged in her complaint. It asserts that on May 30, 1965, she suffered a cerebral vascular accident. Her reply brief candidly states that she 'knew she was ill, that she had suffered a stroke and was partially and permanently paralyzed.' However, she maintains that it was not until June 1, 1967, that she knew the Enovid was the cause of this condition. From plaintiff's description of the severity of her condition in the complaint and her reply brief it is inconceivable that her injury was not occasioned by a traumatic event and that she knew of this injury more than two years prior to the filing of her complaint." 56 Ill. 2d 548, 558-59.

Defendant argues that the *Berry* case is identical to the instant case and the above-quoted language disposes of this case. We cannot agree. The *Berry* and *Brown* cases dealt with traumatic injuries, ones of which a prospective plaintiff would immediately be aware. In the present case, Mrs. Martinez' injury could hardly be characterized as "traumatic." The following language from *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934, recognizes and highlights this distinction:

"The situation presented in *Lipsey* is similar to that in traumatic injury and foreign substances malpractice cases. In traumatic injury cases, that is, where the damage is caused by external violence (see Black's Law Dictionary (rev. 4th ed. 1968), 'Trauma', 'Traumatic'), it has been recognized that the time when a plaintiff knows or should have known of his right to sue is when he is injured. (*E.g., Williams v. Brown Manufacturing Co.,* 45 Ill. 2d 418, 261 N.E.2d 305; *Berry v. G. D. Searle Co.,* 56 Ill. 2d 548, 309 N.E.2d 550.) Foreign substance medical malpractice cases are similar to trauma cases in that the time when a plaintiff discovers the injury—the substance left behind—is obviously also the time when he knows or should have known both that he has been injured and that the injury is the result of another's negligence.

That in some types of cases an awareness of a physical problem also carries with it awareness of its wrongful causation, does not

dictate a triggering of the limitations period in all malpractice cases when one becomes aware solely of a physical problem.

We note that a different rule has been recognized as applicable when the injury involved is of a type which does not immediately put one on notice of its origination by negligent means." 59 Ill. App. 3d 706, 711.

The court in *Roper* went on to quote from *Wigginton v. Reichold Chemicals, Inc.* (1971), 133 Ill. App. 2d 776, 779-80, 274 N.E.2d 118, as follows:

" 'In cases involving a disease resulting from neglect, negligence or a defective product we believe that the more logical and tenable position is that the cause of action accrues and the statute of limitation begins to run when the diseased party discovered or should have discovered that he is ill as the result of some neglect on the part of another party or as the result of being wrongfully exposed to a defective product. [Citations.]'

We take note that the court indicated in both cases that it was applying the time of discovery rule as had been done in medical malpractice cases, citing *Lipsey* and section 21.1 of the Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 22.1)." 59 Ill. App. 3d 706, 711.

We feel this distinction is valid and applicable to the instant case.[1] The physical symptoms were not so severe that Mrs. Martinez would necessarily know that she was injured. Furthermore, in *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550, the supreme court did not have to consider whether plaintiff had reason to know she was injured since she admitted that she knew she had a stroke and was paralyzed. The court therefore found the injury was occasioned by a traumatic event and that plaintiff knew of the injury. Robins contends that Mrs. Martinez admitted in her affidavit that she knew of her physical problem shortly after the insertion of the I.U.D. and that the I.U.D. was responsible for this problem. A reading of the affidavit reveals that Mrs. Martinez did not know the I.U.D. was present until July 1975, so that she could not have known that it was responsible for her pain.

Finally, Robins argues that the doctrine of continuing negligence, which applies to Dr. Rosenzweig, is inapplicable to itself. In counts IV and VI of the amended complaint, plaintiffs allege a continuing negligence on the part of defendant Robins until some time in October 1975 in that it negligently failed to warn the physician and plaintiff of possibly dangerous aspects of the I.U.D. These allegations, if true, could make the

---

[1] We note that the *Wigginton* case was cited by the supreme court without comment in *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 334 N.E.2d 160. This suggests approval by the court of the *Wigginton* interpretation of the discovery rule and its application in that case.

doctrine of continuing negligence applicable to defendant Robins. ■ Since the discovery rule is applicable in both instances, Mrs. Martinez' cause of action against Robins would accrue at the same time as the statute of limitations began to run against Dr. Rosenzweig. Whether Mrs. Martinez actually knew or had reason to know of the physical problem and that someone may be responsible for it more than two years before she filed suit is a question of fact to be determined by the trier of fact based on the particular facts and circumstances of this case. (*Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 380 N.E.2d 816.) Since a jury has been demanded and sufficient evidence exists to withstand a motion to dismiss on this issue, the jury should decide this question as it would other questions of fact. Ill. Rev. Stat. 1977, ch. 110, par. 48(3).

■ Concerning Mr. Martinez' claim for loss of consortium, we find that his suit was timely whether or not his wife's claim is barred. On March 7, 1977, when Mr. Martinez filed his complaint, the statute of limitations applicable to actions for loss of consortium was the general 5-year limitation of section 15 of the Limitations Act. (Ill. Rev. Stat. 1975, ch. 83, par. 16; *Mitchell v. White Motor Co.* (1974), 58 Ill. 2d 159, 317 N.E.2d 505.) The suit was filed within this time period and was therefore valid. Subsequently, effective October 1, 1977, section 14.1 was added to the Limitations Act, requiring actions for loss of consortium to be filed within the same period as the underlying personal injury claim. The order dismissing plaintiffs' action was entered on October 19, 1977, apparently applying the new limitation. Defendant Robins argues that section 14.1 of the Limitations Act should be applied retroactively to bar Mr. Martinez' claim, since that would effectuate the legislative intent expressed in the added section. They rely on the following passage from *Duquoin Township High School District No. 100 v. Industrial Com.* (1928), 329 Ill. 543, 161 N.E. 108, as support for their position:

> "When a change of law merely affects the remedy or the law of procedure, all rights of action will be enforcible under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether suit has been instituted or not, unless there is a saving clause as to existing litigation. [Citation.]" 329 Ill. 543, 545-46.

The supreme court recently rejected Robins' contention in *Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211. There, the court stated:

> "* * * An amendment shortening a limitation period does not operate to divest a litigant of his cause of action if his suit has already been filed. If, for example, a limitation statute permits the filing of an injury action within two years and the plaintiff files his suit for such an injury 18 months after the cause of action accrued and while his suit is pending the limitation statute is amended

requiring the filing of such actions within one year, the amendment has no effect on the pending action. * * *

* * * We likewise hold that an amendment shortening the limitation period will not be applied retroactively in such a manner as to terminate a cause of action filed within the limitation period prior to the effective date of the amendment." 73 Ill. 2d 78, 83-84.

Since this is precisely the situation in the instant case, we hold that section 14.1 of the Limitations Act should not be applied retroactively to bar Mr. Martinez' action.

Accordingly, the order dismissing the plaintiffs' actions is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.