THEODORE GAUDYNSKI, Plaintiff-Appellant, *v.* M. M. CORBETT *et al.,* Defendants-Appellees.

First District (4th Division)   No. 78-837

Opinion filed February 28, 1980.

Donald X. Murphy, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas R. Nelson, Norman J. Barry, Jr., and Terrence M. Johnson, of counsel), for appellees.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This medical malpractice action was brought by the plaintiff, Theodore Gaudynski, to recover damages arising out of the hip-pinning surgery that was performed upon him at Mt. Sinai Hospital Medical Center (Mt. Sinai) in Chicago, Illinois. The defendants, M. M. Corbett, Leo Miller, Sidney Morgenstern and Mt. Sinai, filed motions to dismiss plaintiff's complaint, based on the statute of limitations defense (Ill. Rev. Stat. 1977, ch. 83, par. 22.1). The trial court granted their motion, and plaintiff appeals. We affirm.

The issue presented for review is whether the statute of limitations begins to run when the injured party discovers or should have reasonably discovered not only the nature of his injury, but also that it may have been wrongfully caused.

On or about May 30, 1970, plaintiff Gaudynski was admitted to Mt. Sinai for the repair of a fracture that required hip-pinning surgery. After the surgery was performed, he developed an infection in and around the surgical wound area, which was diagnosed as osteomyelitis. The plaintiff testified in a deposition that a few days after the operation the bandages were changed and he noticed the area was red and swollen, and there was a "yellowish, green-yellowish" liquid coming from the scar area. He stated that a doctor examined the surgical site and told him there was an infection in the wound area that was causing the redness and the drainage. Plaintiff stated that during his recovery period after the surgery the pain gradually increased and began to develop into a pain in the bone itself. He stated that at the time of his discharge from the hospital he could not walk and has not walked since. He continued to have the pain, redness and drainage around the wound area.

Almost 9 months later, on February 26, 1971, he was readmitted to Mt. Sinai where a second operation was performed for the removal of the pins from plaintiff's hip. He recalled being told the operation was to remove the pins because of an infection around the bone where the pins had been set. After the second operation, plaintiff noticed the wound area was more red, and it drained through the sutures in an increasing volume. He also felt more pain and continually ran a fever. During his second hospital stay, plaintiff was placed on a hemovac pump. The doctors explained to him that the purpose of the pump was to clear up the infection. However, plaintiff stated that after the pump was removed his leg was still draining, and swollen, and the pain was still increasing. Plaintiff was then discharged from the hospital.

On June 11, 1971, slightly more than a year after the original surgery,

plaintiff was readmitted to Mt. Sinai where he underwent a third operation on his hip. Dr. Altner excised part of the bone in plaintiff's infected hip. Plaintiff stated Dr. Altner informed him before surgery that he was removing the bone in the hip area because it was infected with osteomyelitis. After the surgery, Dr. Altner told him that in the course of the third operation the bone had been found infected and that plaintiff had osteomyelitis. Plaintiff further testified that after the surgery by Dr. Altner the area was still red, swollen and draining a yellow-green liquid. Plaintiff also stated he had been informed by medical personnel "that this disease or infection could develop in anyone at any time."

Plaintiff stated he went back to Mt. Sinai for a fourth time when he was treated for high blood pressure. During that stay, no treatment or work was performed on his hip.

According to plaintiff, he was not treated again for his leg and hip condition, after the third operation in 1971, until 1975, when he received treatment from Dr. Piyetti and was again hospitalized at Mt. Sinai. Dr. Piyetti discussed the condition of plaintiff's leg and hip with him and proposed the pumping of antibiotics into plaintiff's infected bone; that procedure was not performed. After plaintiff was released from Mt. Sinai in 1975, he did not return for further treatment of his hip.

Plaintiff's complaint asserted he did not become aware that he had a cause of action for medical malpractice until after he consulted his lawyer on September 5, 1975. Plaintiff filed suit on November 5, 1976, to recover for the alleged malpractice. Defendants moved to dismiss plaintiff's complaint, and the motion was granted.

Plaintiff contends the statute of limitations begins to run when the injured party discovers or should reasonably have discovered that he had been injured and that the injury was wrongfully caused. *Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 380 N.E.2d 816.

The statute of limitations that applies to plaintiff's malpractice claim is section 21.1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 22.1), which provides in relevant part:

"§21.1 No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, * * * but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."

This statute became effective on September 19, 1976, almost 2

months before plaintiff filed his complaint. Therefore, since the effective date of the statute was prior to the filing of the complaint, the 1977 statute applies to the present case.

Section 21.1 of the Limitations Act has been called the "discovery rule." It was first applied in medical malpractice cases in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450. *Lipsey* stated that a cause of action accrues in medical malpractice cases when the person injured "learns of his injury or should reasonably have learned of it." (*Lipsey*, at 40.) Since the *Lipsey* decision, there have been several other statute of limitations cases in the malpractice area. A more recent case, which attempts to interpret *Lipsey*, is *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934. *Roper* interpreted the phrase, "learns of the injury," in *Lipsey* as intending to express that the statute of limitations begins to run "when there is a concurrence of the actual or constructive knowledge of both the physical problem and the possibility that someone is at fault for its existence." *Roper*, at 710.

Plaintiff contends he had no knowledge until September 1975 that he had received improper medical care, and the mere presence of osteomyelitis should not impute knowledge to him that he had a cause of action for medical malpractice. We disagree.

Mt. Sinai cites *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550, which decided the same issue as is presented in this case. There, the plaintiff suffered a stroke on May 30, 1965, which she alleged was the result of certain birth control pills she was taking that were manufactured by the defendant. She filed her complaint on May 29, 1969, stating that the statute of limitations began to run on July 1, 1967, when she discovered her stroke was caused by the pill. Our supreme court rejected this argument, stating that:

> "From plaintiff's description of the severity of her condition in the complaint and her reply brief it is inconceivable that her injury was not occasioned by a traumatic event and that she knew of this injury more than two years prior to the filing of her complaint." *Berry*, at 559.

In the present case, plaintiff was informed of his bone infection in 1970 after the first operation. He was specifically told about the osteomyelitis by Dr. Altner in 1971. At that time, Dr. Altner informed plaintiff that the osteomyelitis probably began from the first operation. Plaintiff continued to have problems with his leg and hip and admitted that the pain worsened, the area continued to be red, and the yellowish-green substance continued to drain.

■■ We believe plaintiff reasonably should have discovered his injury prior to consulting his attorney. A cause of action accrues in a medical

malpractice case when the injured party learns of his injury, not when it is actionable. *Ilardi v. Spaccapaniccia* (1977), 53 Ill. App. 3d 933, 935, 369 N.E.2d 144, 146.

In *Ilardi*, the plaintiff attempted to argue that under the constructive knowledge (should have known) qualification of the Limitations Act she did not have any reasonable grounds to believe she had suffered an "actionable injury" until February 1975, which was after the 2-year limitation.

In the instant case, plaintiff was informed by Dr. Altner that he had osteomyelitis in June 1971. At that point, plaintiff should have known his injury was caused by the improper care of defendants.

Two very recent appellate court cases lend support to the principles enunciated in *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934; they are *Watkins v. Health & Hospitals Governing Com.* (1979), 78 Ill. App. 3d 468, 397 N.E.2d 228, and *Ikenn v. Northwestern Memorial Hospital* (1979), 73 Ill. App. 3d 694, 392 N.E.2d 440.

In *Ikenn*, the plaintiff was born prematurely and placed in an incubator. There was an excessive amount of oxygen given to her and she became blinded in both eyes. Plaintiff was 22 years of age when she brought the suit. She alleged she had no knowledge that her blindness might have been caused by defendants until she was 22 years old. The court stated that by making an inquiry plaintiff could have learned before her 20th birthday that her blindness was the result of improper treatment at the hospital at her birth.

In *Watkins*, the court reached the opposite result. In that case, plaintiff was injected with a dye that later caused the removal of her right leg. Plaintiff filed suit more than 2 years after her amputation, and the trial court dismissed her complaint, stating that it was barred by the statute of limitations. We reversed on the ground that due to plaintiff's diabetic condition she could reasonably have assumed the amputation was due to that disease as opposed to the negligent care of the defendants. In *Watkins*, we reiterated the rule stated in *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 710, 375 N.E.2d 934, 938, that the statute of limitations begins to run when the "injured party discovers, or should reasonably have discovered, not only the nature of the injury but also the possibility that it was wrongfully caused." *Watkins v. Health & Hospitals Governing Com.* (1979), 78 Ill. App. 3d 468, 472, 397 N.E.2d 228, 231.

We find, after reviewing recent decisions in this area, that plaintiff could have reasonably discovered his condition, osteomyelitis, was caused by defendants' act which might have been negligent, and that no action for malpractice was filed within the statutory period.

■■ The plaintiff further contends that pleadings, affidavits in support of the motion, answer to interrogatories, and deposition evidence may be

considered in ruling on motions to dismiss. Plaintiff cites *Tompkins v. France* (1959), 21 Ill. App. 2d 227, 157 N.E.2d 799, for that proposition. We agree such documents can be used, and in reviewing the deposition of plaintiff he specifically stated he was aware of the infection shortly after the first operation in 1970. He stated that he was told he had osteomyelitis by Dr. Altner in 1971. However, plaintiff did not file his complaint until November 1976. Our review of the record compels us to find that the trial court was correct in dismissing plaintiff's complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P. J., and JIGANTI, J., concur.