ALISA COURTNEY *et al.*, Plaintiffs-Appellants, v. SEARLE PHARMA-
CEUTICALS, INC., *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—89—2884

Opinion filed December 27, 1990.

Drumke & Patterson, Ltd., of Chicago (Ronald A. Drumke and Danielle M. Jaeschke, of counsel), for appellants.

Sidley & Austin, of Chicago (Arlene C. Erlebacher and Barbara M. De-Coster, of counsel), for appellees.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Plaintiff Alisa Courtney (plaintiff) and her husband filed suit for injuries plaintiff allegedly sustained following her use of a copper intrauterine contraceptive device (hereinafter CU-7) manufactured and distributed by defendants. The trial court entered summary judgment in defendants' favor on the ground that plaintiff's suit was barred by the applicable two-year statute of limitations. (Ill. Rev. Stat. 1987, ch. 110, par. 13—202.) The record establishes as a matter of law that plaintiff knew or should have known, more than two years prior to the filing of her suit, that the injuries for which she seeks compensation were caused by defendants' allegedly defective product. Accordingly, we affirm.

The record reveals the following pertinent facts. Plaintiff was fitted with a CU-7 in May 1977. She was not told or warned of any complications that could arise from the device. The following month, she began to bleed profusely, but was told that these symptoms were normal. About a year later, plaintiff developed cramping and discharge. She was advised that she had an infection and was given antibiotics.

In October 1978, plaintiff requested that the CU-7 be removed,

because she had again developed cramping and was "convinced" that the CU-7 was the source of this problem. Plaintiff was advised by her physician that she had pelvic inflammatory disease (PID), and that this condition was caused by the CU-7. The device was removed as plaintiff requested. Plaintiff was not informed at this time that there was any correlation between her use of a CU-7, the development of PID, and the resulting possibility that she might suffer reduced fertility.

Approximately 3½ years later, in March 1980, plaintiff advised her gynecologist, Dr. Harold Loeff, that she was experiencing lower abdominal pain during intercourse. In reviewing her medical history, Dr. Loeff noted that plaintiff had suffered PID and informed her that this had been caused by use of the CU-7. The physician also advised plaintiff that he would not have fitted plaintiff with any type of an intrauterine contraceptive device, since they can cause problems with "the reproductive organs." However, Dr. Loeff did not specifically advise plaintiff that she might or would be rendered infertile because of the PID she had suffered from use of the CU-7.

Plaintiff was married in September 1981 and returned to Dr. Loeff in the winter of 1981 because she had been unable to conceive a child since the marriage. In the spring of 1982, Dr. Loeff performed fertility tests that indicated one of plaintiff's fallopian tubes was clogged. At this time, he did not give plaintiff a specific reason for this condition. Thereafter, in the spring of 1983, Dr. Loeff performed a surgical procedure that determined plaintiff's fallopian tubes were severely scarred. The physician repaired the scarring during the operation. After the surgery, Dr. Loeff told plaintiff that the scarring was "just terrible" and that she had only a 40% chance of conceiving a child. He informed plaintiff that the scarring was caused by the PID she had suffered resulting from use of the CU-7. Efforts with a fertility drug prescribed by Dr. Loeff during the summer of 1983 proved unsuccessful.

In August 1983, plaintiff sought the medical treatment and advice of a fertility expert, Dr. Rodney Hoxsey. During the initial consultation, Dr. Hoxsey advised plaintiff that her PID, which resulted from use of a CU-7, was probably causing her infertility problems. Dr. Hoxsey performed surgery in November 1983 that revealed additional scarring which reduced plaintiff's likelihood of conception to 15%. He reported to plaintiff, after his subsequent surgical repair of the scarring in March 1984, that her chances of becoming pregnant were 50%. Dr. Hoxsey never informed plaintiff that her decreased fertility was caused by anything other than the PID she suffered from the CU-7.

Although plaintiff became pregnant in December 1984, she miscarried in January 1985. Subsequent efforts, including fertility medication and *in vitro* treatments between October 1986 and September 1987, have been unsuccessful.

In April 1986, plaintiff requested and received a written statement from Dr. Loeff that, in his opinion and to a reasonable degree of medical certainty, plaintiff's reduced fertility was caused by the PID she suffered as a result of the CU-7. Plaintiff filed suit against defendants on May 13, 1986. Following briefing and argument, the trial court entered summary judgment in defendants' favor, concluding that plaintiff's suit was barred by the two-year statute of limitations. Plaintiff's timely appeal followed.

██ ▌ Illinois law requires that plaintiff's strict product liability claim against defendants be filed within two years after plaintiff "knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful acts of another." (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 169, 421 N.E.2d 864; Ill. Rev. Stat. 1987, ch. 110, par. 13–202.) Although the discovery rule does not require that plaintiff know with certainty that she has suffered a legal injury, it does anticipate that plaintiff be possessed of sufficient information to cause her to inquire further in order to determine whether a legal wrong has been committed. (*Nolan*, 85 Ill. 2d at 171; see also *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976.) Summary judgment is appropriate when the record shows as a matter of law that plaintiff had notice more than two years prior to filing suit that her injury was caused by defendants' wrongful act. *Nolan*, 85 Ill. 2d at 171-72.

Defendants contend that plaintiff knew or should have known, at least by November 1983 or March 1984 following the treatments plaintiff received from Dr. Hoxsey, that plaintiff's fertility was substantially impaired because of the PID she suffered from the use of a CU-7. We agree.

The record in the case at bar demonstrates that plaintiff was first informed by Dr. Loeff in March 1980 that her earlier development of PID could cause problems with "the reproductive organs." Approximately three years later, in 1983, Dr. Loeff confirmed to plaintiff that her fertility was significantly reduced because of the effects of PID, and advised plaintiff that the PID was caused by use of the CU-7. Dr. Loeff's statements to plaintiff were repeated to plaintiff by Dr. Hoxsey later in 1983, when Dr. Hoxsey informed plaintiff that her fertility problems were probably caused by PID that resulted from use of the CU-7. Following the surgical repairs undertaken by Dr. Hoxsey in

March 1984, plaintiff was advised that her likelihood of conception was 50%. Dr. Hoxsey never indicated that plaintiff's reduced fertility was caused by anything other than the PID she suffered from defendants' CU-7.

■■ ■ In view of these circumstances, we conclude that the record shows, as a matter of law, that plaintiff had sufficient information, by the time she was rendered treatment from Dr. Hoxsey between August 1983 and March 1984, to place her on inquiry that she had a cause of action against defendants because of her reduced fertility from defendants' CU-7. Dr. Loeff's letter to plaintiff, in April 1986, provided written confirmation of the advice he had given plaintiff over 2½ years earlier and does not serve to extend the applicable time period for the filing of plaintiff's complaint against defendants. See *Kruk v. Birk* (1988), 168 Ill. App. 3d 949, 958, 523 N.E.2d 93; *Beasley v. Abusief* (1986), 146 Ill. App. 3d 54, 60, 496 N.E.2d 263.

■■ In addition, we are unable to say that plaintiff's pregnancy in December 1984 compels a different conclusion in the instant cause. This event was possible because of the efforts of plaintiff's two physicians, both of whom had advised plaintiff of her reduced fertility from use of the CU-7. We do not believe that the medical treatments rendered by these doctors, which were intended to overcome the complications caused by defendants' CU-7, should serve to nullify the advice given by the physicians that plaintiff's fertility was substantially impaired because of the use of a CU-7.

■■ The cases cited by plaintiff are factually distinguishable from the instant cause. In *LaManna v. G.D. Searle & Co.* (1990), 204 Ill. App. 3d 211, and *Ravin v. A.H. Robins Co.* (1989), 182 Ill. App. 3d 46, 538 N.E.2d 164, the plaintiffs were not clearly informed by their physicians, until less than two years before suit was filed, that the plaintiffs' reduced fertility was associated with the defendants' intrauterine contraceptive device. As a result, the appellate court in *LaManna* and *Ravin* determined that there was a genuine issue of material fact with respect to when the plaintiffs knew or should have known that their reduced fertility was caused by defendants' allegedly defective product. (See also *Martinez v. Rosenzweig* (1979), 70 Ill. App. 3d 155, 387 N.E.2d 1263.) In the case at bar, plaintiff was repeatedly advised that her fertility was significantly reduced because of the PID she developed from use of the defendants' CU-7. These specific admonitions were given to plaintiff by two physicians on separate occasions during the course of medical treatment that culminated in Dr. Hoxsey's second surgical treatment, in March 1984, when plaintiff was told that her likelihood of conception was 50%. Neither of

plaintiff's physicians ever informed plaintiff that her reduced fertility was caused by any factor other than the PID she had suffered from defendants' CU-7. Under these circumstances, we can find no error in the trial court's ruling that plaintiff's suit against defendants, filed in May 1986, was barred by the two-year statute of limitations.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI and JOHNSON, JJ., concur.