CAROL WEIDMAN, Plaintiff-Appellant, v. FRANK WILKIE, Defendant (Mark Guinan *et al.*, Defendants-Appellees).

First District (4th Division)    No. 1—94—4096

Opinion filed December 29, 1995.

Callahan, Fitzpatrick, Lakoma & McGlynn, of Oak Lawn (William F. Fitzpatrick, of counsel), for appellant.

Clausen, Miller, P.C., of Chicago (James T. Ferrini, William J. Oberts, and Edward M. Kay, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Carol Weidman, appeals from orders of the circuit court granting motions for involuntary dismissal in favor of the defendants, Mark Guinan, David Garagiola, and Radiology Imaging Specialists, Ltd., and for summary judgment in favor of the defendant, Little Company of Mary Hospital. The issues on appeal are (1) whether the circuit court properly found that the plaintiff's actions against these defendants were untimely as a matter of law, and (2) whether the defendants are estopped from raising statute of limitations defenses by reason of inaccurate information contained in medical reports they prepared. For the reasons that follow, we reverse the orders of the circuit court and remand this action for further proceedings.

The facts leading up to this litigation are not in dispute. In December 1989, the plaintiff, a registered nurse, began to experience back pain and difficulty walking. In May 1990, she consulted the defendant, Guinan, her family physician. Guinan referred her to the defendant, Frank Wilkie, a neurosurgeon.

Wilkie examined the plaintiff on May 7, 1990. After ordering certain tests, Wilkie diagnosed the plaintiff as suffering from disc disease and recommended surgery. Wilkie performed a laminectomy on the plaintiff at Little Company of Mary Hospital on May 15, 1990. On May 25, 1990, the plaintiff was discharged from the hospital and returned home.

Some weeks after her surgery, the plaintiff began to experience pain in her back and right leg which progressively worsened as time passed. On three occasions in August 1990, she sought emergency room care at Little Company of Mary Hospital. During that same month, the plaintiff underwent certain diagnostic tests including a CAT scan performed by employees of Little Company of Mary Hospital and an MRI by Radiology Imaging Specialists, Ltd. The CAT scan report and the MRI, which were interpreted by the defendant, David Garagiola, revealed scar tissue and encased nerve roots

in the area of the plaintiff's May 1990 surgery. Neither report noted any bone infection.

On August 31, 1990, the plaintiff was readmitted to Little Company of Mary Hospital and treated by both Guinan and Wilkie. She remained in the hospital until September 12, 1990. After her discharge, the plaintiff began treatment at the University of Chicago Pain Clinic. Those treatments continued through October 1990.

The plaintiff saw Wilkie on November 12, 1990, and complained of continuing back pain. According to the plaintiff, Wilkie explained that additional surgery could be performed to remove the scar tissue and release the encased nerve roots noted on the CAT scan and MRI reports. The plaintiff consented to the surgery, which was performed by Wilkie at Little Company of Mary Hospital on November 15, 1990. The records of that surgery fail to note that any bone infection was detected.

After her surgery of November 15, the plaintiff remained hospitalized until December 4, 1990, when she was transferred to Marianjoy Rehabilitation Center. She remained at Marianjoy until January 4, 1991, when she was transferred to Central Du Page Hospital.

While at Central Du Page Hospital, the plaintiff came under the care of Dr. Lewis, an infection control specialist, and Dr. Kolavo, a reconstruction surgeon. Both doctors informed the plaintiff that she was suffering from an infection in her back. On January 15, 1991, surgery was performed on the plaintiff at Central Du Page Hospital which consisted of a debridement of the infection in her spine and reconstructive bone grafting. On January 31, 1991, the plaintiff required a spinal fusion to stabilize her back. The plaintiff remained hospitalized until February 20, 1991, when she returned to Marianjoy. On March 17, 1991, she was discharged from Marianjoy and returned home.

According to the plaintiff, she retained an attorney in 1991 to process a claim for social security disability benefits. In the course of that representation, the attorney obtained copies of her medical records and engaged a medical consultant to review those records. The plaintiff testified she was informed by her attorney in August 1992 that the CAT scan and MRI taken in August 1990 disclosed the existence of osteomyelitis and vertebral destruction. Plaintiff maintains that this was the first indication she received that she was suffering from osteomyelitis prior to her November 15, 1990, surgery.

On October 16, 1992, the plaintiff filed her original complaint in this action. In that complaint, she pled a cause of action for medical negligence against Wilkie for failing to diagnose and treat her osteo-

myelitis, and for performing the November 15, 1990, surgery which she claimed was contraindicated. At that time, the plaintiff named Little Company of Mary Hospital and Radiology Imaging as respondents in discovery pursuant to section 2—402 of the Code of Civil Procedure (Code), but she failed to join them as defendants within the six-month period provided in that statute. 735 ILCS 5/2—402 (West 1992).

On April 22, 1993, the plaintiff filed an amended complaint which, for the first time, named Guinan, Garagiola, Radiology Imaging, and Little Company of Mary Hospital as defendants and alleged actions for medical negligence against each of them. Guinan, Garagiola, and Radiology Imaging filed motions pursuant to section 2—619(a)(5) of the Code (735 ILCS 5/2—619(a)(5) (West 1992)) claiming that the plaintiff's actions against them were barred by the two-year statute of limitations set forth in section 13—212 of the Code (735 ILCS 5/13—212 (West 1992)). Little Company of Mary Hospital filed a motion for summary judgment pursuant to section 2—1005 of the Code (735 ILCS 5/2—1005 (West 1992)), which also claimed that the plaintiff's action was time-barred.

In its September 30, 1994, ruling on the motions of Guinan, Garagiola, and Little Company of Mary Hospital, the trial court found that the two-year statute of limitations applicable to the plaintiff's actions began to run in January 1991 when she was advised that she suffered from an infection in her back. Since the plaintiff first joined these defendants as parties with the filing of her amended complaint on April 22, 1993, the trial court found that the actions were time-barred and granted the defendants' motions.

On November 18, 1994, the motion of the defendant Radiology Imaging came before the trial court along with the plaintiff's motion for reconsideration of the September 30 order. The court denied the plaintiff's motion for reconsideration, granted the motion of Radiology Imaging, and entered the requisite findings pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) making its orders of September 30 and November 18 appealable. The plaintiff timely filed her notice of appeal.

■ Before addressing the statute of limitations issue presented by this appeal, we will address the plaintiff's estoppel claim. Relying upon the holdings in *Jackson Jordan, Inc. v. Leydig, Voit & Mayer* (1994), 158 Ill. 2d 240, 633 N.E.2d 627, and *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869, the plaintiff argues that the actions of the defendants induced her to delay filing suit, and as a consequence, they should be estopped from raising defenses based on the statute of limitations. The problem with this argument is that the plaintiff

failed to plead estoppel in her complaint (see *People ex rel. Skinner v. Graham* (1988), 170 Ill. App. 3d 417, 524 N.E.2d 642), and after requesting and receiving leave to file an amended complaint raising that claim, she withdrew her request and never amended her complaint. Further, a claim of estoppel does not lie in a medical malpractice action when, as in this case, it is predicated solely upon an alleged misdiagnosis contained in a medical report. (*Smith v. Cook County Hospital* (1987), 164 Ill. App. 3d 857, 518 N.E.2d 336.) We find the plaintiff's argument on this issue to be without merit.

The significant issue presented by this appeal is whether it can be said as a matter of law that the two-year statute of limitations applicable to the plaintiff's medical negligence claims against the defendants commenced running prior to April 22, 1991. The defendants argue that the limitations period commenced to run in January 1991 when the plaintiff was informed that she suffered from an infection in her back. The plaintiff argues that although she knew of the infection in January 1991, she could not reasonably have known that the infection was the result of wrongful conduct until August 1992 when she was informed that the CAT scan and MRI taken in August 1990 revealed the existence of osteomyelitis.

■ Section 13—212 of the Code provides that no action shall be brought against a physician or hospital for malpractice more than "2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, *** of the injury or death for which damages are sought." (735 ILCS 5/13—212 (West 1992).) This section of the Code has been interpreted to mean that a cause of action for medical malpractice accrues and the statute of limitations begins to run when the plaintiff knows, or reasonably should have known, both that she was injured and that her injury was wrongfully caused. (*Rio v. Edward Hospital* (1984), 104 Ill. 2d 354, 472 N.E.2d 421.) This interpretation is an application of what has come to be known as the "discovery rule." (See *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976; *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 421 N.E.2d 864; *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869.) While the rule and its effect are rather easily stated, application of the rule is quite another matter.

■ Determining that point in time when a person knows that she is injured generally presents little difficulty. The difficulty in applying the discovery rule comes in attempting to determine when a person reasonably should know that her injuries were wrongfully caused. As this court noted in *Bates v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 137, 438 N.E.2d 1250:

"The term 'wrongfully caused' must be viewed as a general or generic term and not a term of art. It does not mean that the plaintiff must have knowledge of a specific defendant's negligent conduct or knowledge that an actionable wrong was committed. [Citations.] An injured person knows or should know that the injury was 'wrongfully caused' when he 'becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences.' (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416.) This is usually a question of fact unless the facts are undisputed and only one conclusion may be drawn from them. [Citations.]" *Bates*, 108 Ill. App. 3d at 140-41.

In urging affirmance, the defendants rely heavily upon this court's opinion in *Gaudynski v. Corbett* (1980), 81 Ill. App. 3d 910, 401 N.E.2d 1218, which involved circumstances similar to those presented in the instant case. In *Gaudynski*, the plaintiff underwent surgery to repair a broken hip in May 1970. After surgery, he noticed that the area around the wound was red and swollen, and a yellowish-green secretion was draining from the scar. A doctor who examined the surgical site informed Gaudynski that his condition was the result of an infection. In February 1971, Gaudynski underwent a second surgery on his hip and experienced more redness, swelling, and drainage in the wound area. He was again informed that he was suffering from an infection.

In June 1971, Gaudynski required a third hip operation. During this third surgery, the infected portion of his hip bone was removed. He experienced more post-operative redness, swelling, and drainage. Dr. Altner informed him that the third surgery was necessary because he was suffering from osteomyelitis that probably began at his first surgery. Thereafter, Gaudynski received no treatment for his hip until 1975 when he was again hospitalized and it was determined that his hip bone was still infected. In September of that year, he consulted an attorney, and in 1976 filed a medical malpractice action. The defendants moved to dismiss the action, claiming that it was time-barred. The trial court agreed and granted their motion. In affirming the dismissal, this court held:

"[P]laintiff was informed of his bone infection in 1970 after the first operation. He was specifically told about the osteomyelitis by Dr. Altner in 1971. At that time, Dr. Altner informed plaintiff that the osteomyelitis probably began from the first operation. Plaintiff continued to have problems with his leg and hip and admitted that the pain worsened, the area continued to be red, and the yellowish-green substance continued to drain.

\* \* \*

\*\*\* [P]laintiff was informed by Dr. Altner that he had osteomyelitis in June 1971. At that point, plaintiff should have known his injury was caused by the improper care of defendants." *Gaudynski*, 81 Ill. App. 3d at 913-14.

■ In this action, the defendants contend that the plaintiff's own discovery deposition reveals that, in January 1991, she was informed of the extensive infection in the bone of her back and was aware that the condition was osteomyelitis. Based upon the plaintiff's admission that, as a nurse, she knew osteomyelitis was "an infection of the bone caused by some outside entry," possibly surgery, the defendants further contend the plaintiff should have known that her osteomyelitis existed prior to her November 1990 surgery. They conclude that, in January 1991, the plaintiff was possessed of sufficient information about her infection and its cause to put her on inquiry to determine if the defendants failed to properly diagnose and treat her condition, and, as such, the two-year statute of limitations commenced running as a matter of law.

Our reading of the plaintiff's testimony during the course of her discovery deposition, taken in context, reveals a somewhat different scenario than the one relied upon by the defendants. To be sure, the plaintiff admitted she was informed in January 1991 that she had an infection in her back bone. However, contrary to the defendants' contention, she never admitted that she was informed that the infection was advanced or that it was osteomyelitis. Her testimony relating to the causes of osteomyelitis was in response to questions directed to her knowledge as a nurse, and not specific to her knowledge of the type and source of her own infection in January 1991. More to the point, the plaintiff specifically denied that she was told of the source of her infection or when she contracted it. Additionally, the plaintiff submitted the affidavit of her expert, Dr. Kirschenbaum, which stated in relevant part "[t]hat osteomyelitis can and does frequently occur in the absence of any negligence [and] [i]ts presence alone provides no reason to believe that it was the result of negligence or that it was wrongfully caused, particularly in a diabetic" such as the plaintiff.

We believe that the facts of this case differ in certain significant respects from those present in *Gaudynski*. The plaintiff in this action denies she was told that she was suffering from osteomyelitis. Other than continued pain and difficulty in walking, the record does not reveal that the plaintiff suffered other physical manifestations indicative of infection, such as redness or drainage. Moreover, the plaintiff denies being informed as to the source of her infection or the length

of time that it was present. In our opinion, these facts distinguish the instant case from *Gaudynski* and mandate a different result.

As noted earlier, the motions of Guinan, Garagiola and Radiology Imaging were brought pursuant to section 2—619(a)(5) of the Code (735 ILCS 5/2—619(a)(5) (West 1992)), while Little Company of Mary Hospital brought its motion pursuant to section 2—1005 of the Code (735 ILCS 5/2—1005 (West 1992)). This distinction in the motions used by the defendants, however, does not require the application of different standards of review. When, as in this case, a section 2—619 motion is supported by evidentiary material, it is a fact motion essentially amounting to a summary judgment procedure. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444.) Since we have been called upon to review orders of the trial court finding that the plaintiff's actions were time-barred as a matter of law, our review is *de novo*. See *Basu v. Stelle* (1992), 237 Ill. App. 3d 113, 603 N.E.2d 1253.

In conducting that review, we have examined the plaintiff's amended complaint and all of the evidentiary material in the form of affidavits and depositions that was before the trial court at the time of the entry of the orders appealed from. We have construed that evidentiary material in its light most favorable to the plaintiff (see *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397) and have drawn all reasonable inferences therefrom that are favorable to her (see *Lapidot v. Memorial Medical Center* (1986), 144 Ill. App. 3d 141, 494 N.E.2d 838). Based upon that review, we are unable to say, as a matter of law, that the plaintiff was possessed of sufficient information as to the cause of the infection in her back in January 1991 to commence the running of the applicable two-year limitations period. On the state of the record before us, we find that the issue remains one of disputed fact to be decided by a jury and, therefore, we reverse the orders of the trial court and remand this action for further proceedings consistent with this opinion.

Reversed and remanded.

CAHILL and S. O'BRIEN, JJ., concur.