THIRD DIVISION

May 17, 2000

No. 1-99-2479

KAREN PAIGE-MYATT, )  Appeal from the

)  Circuit Court of

Plaintiff-Appellant, )  Cook County. 

)

v. ) 

)

MOUNT SINAI HOSPITAL MEDICAL CENTER, )  No. 97 L 11350

)

Defendant-Appellee, )

)

and DR. MELVIN C. BUNN and )

DR. KARLA L. CLARK, )  Honorable

)  Kathy M. Flanagan,

Defendants. )  Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

Everyone seems to agree it took too long to serve the defendant hospital with the plaintiff's complaint.  The plaintiff does not seriously criticize the trial court for dismissing her lawsuit for failure to exercise reasonable diligence in obtaining service.  See 177 Ill. 2d R. 103(b).

The controversy centers on the trial court's decision to dismiss the lawsuit with prejudice.  The plaintiff contends the dismissal should have been without prejudice to refile.  To resolve the dispute we have to examine the question of whether the statute of limitations ran before or after the dismissal.  
 We conclude the limitations period did not run before the dismissal.  For that reason, we reverse that part of the trial court's order dismissing the cause with prejudice, and we amend the trial court's order of dismissal to be without prejudice to the right to refile.

FACTS

On September 23, 1997, Karen Paige-Myatt (Paige-Myatt) filed a three-count medical malpractice complaint against Dr. Melvin Bunn (Dr. Bunn), Dr. Karla Clark (Dr. Clark), and Mount Sinai Hospital Medical Center (Mount Sinai).  Paige-Myatt's complaint alleged Dr. Bunn and Dr. Clark damaged Paige-Myatt's femoral nerve while performing a total abdominal hysterectomy at Mount Sinai on September 25, 1995.  The complaint did not include a physician's written report as required by the Civil Practice Law.  Instead, the plaintiff's attorney provided an affidavit in which he asserted,

"*** he was unable to obtain a consultation as required by [section 2-622] because a statute of limitation would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations."

See 735 ILCS 5/2-622(a)2 (West 1996).

On August 5, 1998, Paige-Myatt filed a two-paragraph amended complaint.  Paige-Myatt alleged "the Pain Management Center at the University of Illinois" performed a diagnostic procedure called a femoral nerve block, which "*** clearly demonstrated that the Plaintiff suffered some form of injury to her femoral nerve in the area of the groin during abdominal hysterectomy surgery."

Paige-Myatt attached a December 11, 1997, letter to her attorney from Dr. Friedl Pantle-Fisher (Dr. Pantle-Fisher) of the Pain Management Center at the University of Chicago Hospitals.  Dr. Pantle-Fisher reported Paige-Myatt complained of lower back, right hip, and right leg pain immediately after surgery, and her surgeon told her, "'*** this is a common problem that might persist for a week or a month after surgery.'"  Dr. Pantle-Fisher said, "When the symptoms did not resolve, a work-up for the etiology of her symptoms was initiated.  At that time her pain had continued for approximately 5-6 months."

Dr. Pantle-Fisher summarized the treatment Paige-Myatt received over the next 18 months: an April 1996 CT scan of the lumbar spine, which showed no abnormalities; a September 20, 1996, neurosurgical consultation, which yielded normal results except "*** diffuse sensory deficit in the right thigh above the knee in the distribution of the femoral nerve;" September 20, 1996, lumbar spine films which were normal; a September 26, 1996, EMG, which raised some suspicion of lumbar radiculopathy; a November 1996 MRI of the lumbar spine which showed some degenerative disc disease; a December 1996 lumbar myelogram which showed minimal lumbar defects; a December 1996 cerebra-spinal fluid examination which showed no abnormalities; undated CT scans of the lumbar and thoracic spine; a February 17, 1997, neurological consultation which yielded normal results except a "decreased area of sensitivity to pinprick in the right anterior thigh in the distribution of the medial femoral cutaneous branch of the femoral nerve, as well as in the distribution of the saphenous branch of the femoral nerve in an area of the anterior leg above the ankle; and a February 17, 1997, orthopedic consultation which yielded normal results.

Dr. Pantle-Fisher continued: In March 1997, Paige-Myatt had another neurological consultation, after which she began taking Tegretal for "possible neurological pain."  The medication helped Paige-Myatt's pain, but she stopped taking it when she experienced unpleasant side-effects.  According to Dr. Pantle-

Fisher, "The findings at that time were consistent with the diagnosis of neuropathic pain arising in the distribution of the medial femoral cutaneous and saphenous branches of the femoral nerve, without motor involvement."  Dr. Pantle-Fisher said the neurologist also discussed "secondary gain" with Paige-Myatt, and noted, "The etiology of her pain at that point was never addressed or discussed, nor was any connection to the surgical procedure mentioned."

On August 13, 1997, Paige-Myatt sought treatment at the University of Chicago Pain Management Center.  During her first physical examination, Dr. Pantle-Fisher reported, Paige-Myatt "*** described a decreased sensation to touch in the anterior aspect of her right thigh down to the knee in the distribution of the medial femoral cutaneous nerve branch of the femoral nerve of the right leg."  According to Dr. Pantle-Fisher, "Assessment at that time was right femoral neuropathy without motor involvement."  On September 3, 1997, Paige-Myatt underwent a diagnostic differential epidural test, which provided no pain relief.  Dr. Pantle-Fisher's "presumptive" diagnosis: "neuropathic pain with possible patchy sensory block, as well as possible central pain syndrome."

Over the next month, Paige-Myatt's pain did not improve with treatment.  On September 30, 1997, Dr. Pantle-Fisher reported, Paige-Myatt received a 

"*** diagnostic femoral nerve block to confirm the involvement of the femoral nerve in the patient's pain picture.  Ms. Paige[-Myatt] received a femoral nerve block *** in the area of the right groin, which gave her complete pain relief for the duration of the local anesthetic.  This clearly demonstrated that the patient suffered form [sic] an injury to the femoral nerve in the area of the groin ***."

Dr. Pantle-Fisher concluded:

"Since the patient's pain started immediately after surgery had been completed, it can be assumed that some form of injury to the femoral nerve might have occurred during surgery, but this is a presumptive statement, as we were not present during surgery and do not know how the surgical procedure was performed."

Paige-Myatt also attached a section 2-622 report from Dr. Benjamin Johnson (Dr. Johnson).  Dr. Johnson reported "*** the post-operative medical problems Karen is experiencing are the result of injury to the femoral nerve ***, apparently due to surgical trauma by history."

On August 5, 1998, the court issued summonses for each defendant.  Mount Sinai was served with Paige-Myatt's complaint on August 12, 1998.  Dr. Bunn was not served until February 2, 1999, and Dr. Clark never was served.

On October 8, 1998, Mount Sinai filed its appearance, and on November 5, 1998, Mount Sinai filed a motion to dismiss Paige-

Myatt's complaint under Illinois Supreme Court Rule 103(b), for failure to exercise reasonable diligence in obtaining service.

On March 5, 1999, the court granted Mount Sinai's motion.  In a "MEMORANDUM OPINION AND ORDER" the court noted Paige-Myatt made no attempt to serve Mount Sinai for 11 months after filing her complaint and added:

"That plaintiff's diagnosis regarding her injury was 
confirmed
 on September 30, 1997, did not prevent plaintiff from filing her complaint naming Mount Sinai and alleging that Mount Sinai was negligent with respect to the surgery performed on her there.  Further, it did not prevent her from attempting to serve summons on Mount Sinai."  (Emphasis in original.)

The court dismissed Paige-Myatt's complaint with prejudice because Mount Sinai was not served within the statute of limitations.  The court found the two-year medical malpractice limitations period (see 735 ILCS 5/13-212(a) (West 1996)) began to run from the date of Paige-Myatt's surgery on September 25, 1995, and rejected Paige-Myatt's discovery argument as "beyond incredulous."

Paige-Myatt filed a motion to modify this order, asking the court to make the dismissal without prejudice.  Paige-Myatt attached an affidavit to her reply brief.  In this affidavit, Paige-Myatt repeated Dr. Pantle-Fisher's summary of her treatment.  Paige-Myatt said Dr. Pantle-Fisher's August 13, 1997, assessment was "possible right femoral neuropathy without motor involvement" and her September 3, 1997, presumptive diagnosis was "neuropathic pain with possible patchy sensory block, as well as possible central pain syndrome."  According to Paige-Myatt,

"Shortly after my visit to the clinic on September 3, 1997, I contacted my attorney and discussed with him the continuous pain that I am experiencing since my surgery on September 25, 1995 and informed him that Dr. [Pantle-]Fisher made possible assessment on August 13, 1997 that I am suffering from an injury to my femoral nerve in the area of my groin that might have occurred during surgery as a result of some surgical trauma.

* * *

I did not learn of the nature of my possible injury and believed that someone might be at fault for its existence until my first visit to the Pain Management Center at the University of Chicago on August 13, 1997.  Dr. [Pantle-]Fisher *** advised me on September 30, 1997 that she had made diagnosis, as a result of the femoral nerve block, that I am suffering a sensory femoral neuropathy secondary to an injury along the path of my femoral nerve in the area of the groin ***.  [A]nd since my pain started immediately after surgery had been completed, she concludes that some form of injury to my femoral nerve might have occurred during surgery as a result of some surgical trauma."

At the same time, Mount Sinai filed a motion for a finding of appealability under Supreme Court Rule 304(a).  See 155 Ill. 2d R. 304(a).  On June 14, 1999, the court denied Paige-Myatt's motion to modify the March 5 order and granted Mount Sinai's motion for a Rule 304(a) finding.  Paige-Myatt appealed.

DECISION

On appeal, Paige-Myatt offers no excuse for the 11-month delay in serving Mount Sinai.  Clearly, she failed to exercise reasonable diligence, and the trial court's Rule 103(b) dismissal was correct.  See 
Kreykes Electric, Inc. v. Malk & Harris
, 297 Ill. App. 3d 936, 697 N.E.2d 885 (1998).  The issue before us is whether that dismissal should have been with prejudice.  We review the trial court's decision for an abuse of discretion.  
Kreykes Electric
, 297 Ill. App. 3d at 940.

Before July 1, 1997, Rule 103(b) provided:

"If the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the applicable statute of limitations, the action as a whole or as to any unserved defendant may be dismissed without prejudice.  If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice." 134 Ill. 2d R. 103(b).

Rule 103(b) was amended, effective July 1, 1997, and currently provides:

"If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant, the action as to that defendant may be dismissed without prejudice, with the right to refile if the statute of limitations has not run."  177 Ill. 2d R. 103(b).

The 1997 amendment made a subtle change to the prior rule.  Previously, the court would look to the date when the plaintiff failed to exercise reasonable diligence to determine whether the dismissal would operate with prejudice--that is, whether the plaintiff could refile her complaint.  Now the court looks to the date of dismissal to determine whether the plaintiff can refile.  The Committee Comments to the current rule explain:

"Whether the dismissal will extinguish the plaintiff's claims against the dismissed defendant will depend on whether 
the dismissal
 occurs before or after the statute of limitations has run.  If before, the plaintiff will be able to refile; if after, the plaintiff will be unable to refile because the claims will be time-barred."  (Emphasis added.)  177 Ill. 2d R. 103(b), Committee Comments at xxvii.

Here, the trial court dismissed Paige-Myatt's complaint against Mount Sinai on March 5, 1999.  In order to determine whether Paige-Myatt can refile her complaint, we first must decide whether the two-year medical malpractice statute of limitations ran before the dismissal date.

Section 13-212(a) of the Civil Practice Law provides: 

"*** [N]o action for damages for injury or death against any physician *** arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury *** for which damages are sought in the action, whichever of such date occurs first ***."  735 ILCS 5/13-212(a) (West 1996).

Our courts have construed this section and its "discovery rule" to mean the two-year limitations period begins to run when the plaintiff "*** knows or reasonably should know of [the] injury and also knows or reasonably should know that it was wrongfully caused."  
Witherell v. Weimer
, 85 Ill. 2d 146, 156, 421 N.E.2d 896 (1981).  The plaintiff has knowledge an injury was wrongfully caused when she "*** becomes possessed of sufficient information to put a reasonable person on inquiry to determine whether actionable conduct is involved."  
Knox College v. Celotex Corp.
, 88 Ill. 2d 407, 416, 430 N.E.2d 976 (1981); see 
Weidman v. Wilkie
, 277 Ill. App. 3d 448, 453, 660 N.E.2d 157 (1995)
.

In 
Allen v. Thorek Hospital
, 275 Ill. App. 3d 695, 656 N.E.2d 227 (1995), the plaintiff underwent a hysterectomy on April 10, 1991.  Immediately after surgery, she felt numbness in her arm and noticed her fingers were awkwardly curled.  Her condition worsened after she left the hospital, and she visited her surgeon six weeks later.  Her surgeon could not examine her, but his colleague recommended physical therapy.  The plaintiff filed a medical malpractice complaint on April 8, 1993, naming the hospital as a defendant and her surgeon as a respondent in discovery.  In a proposed amended complaint attached to her motion to convert her surgeon to a party-defendant, she claimed she did not discover her arm injury was wrongfully caused until February or March 1992.

The court briefly discussed the discovery rule in the context of its discussion on respondents in discovery.  The court noted the plaintiff knew of her arm injury before she left the hospital following her hysterectomy.  
Allen
, 275 Ill. App. 3d at 702.  And she knew her arm injury was wrongfully caused six weeks later when she visited her surgeon and his colleague recommended physical therapy.  
Allen
, 275 Ill. App. 3d at 702.  At this time, said the court, "*** the plaintiff knew, or reasonably should have known, that physical therapy for an arm injury was not a normal or expected consequence of a hysterectomy."  
Allen
, 275 Ill. App. 3d at 702.  The court concluded the latest time at which the limitations period began to run was the summer of 1991: "The undisputed facts show that plaintiff's assertion that she did not suspect wrongful conduct until almost a year later in March of 1992 is unreasonable."  
Allen
, 275 Ill. App. 3d at 702.

In 
Licka v. William A. Sales, Ltd.
, 70 Ill. App. 3d 929, 388 N.E.2d 1261 (1979), the plaintiff underwent a spinal-disc fusion operation in October 1973.  His back pain continued after surgery, and his surgeon explained back pain was normal after back surgery.  The plaintiff continued to receive treatment from his surgeon until mid-1974.  In May 1975, he learned he would need further treatment because his surgeon had performed the operation at the wrong location on his spine.  He filed a medical malpractice complaint on February 11, 1976, more than two years after his surgery.

The court held the discovery rule rescued the plaintiff's complaint from the limitations period time bar.  
Licka
, 70 Ill. App. 3d at 935.  "Although plaintiff continued to feel pain from the time of the operation in October of 1973," said the court, "the pain could have been consistent with a non-negligent failure of the operation or with normal post-operative pain."  
Licka
, 70 Ill. App. 3d at 935.  The court noted the surgeon could not explain the plaintiff's continued pain, and concluded, "*** it would hardly be reasonable to attribute knowledge of his injury to plaintiff during a time when a specialist in such matters was unable to discover it."  
Licka
, 70 Ill. App. 3d at 935.

Paige-Myatt's case is closer to 
Licka
 than it is to 
Allen
.  Like the plaintiff in 
Allen
, Paige-Myatt experienced pain immediately after her hysterectomy, but Paige-Myatt's pain occurred in an anatomical area near the location of her surgery.  And like the plaintiff in 
Licka
, she received reasonable reassurances from her surgeon such pain was a normal incident of such surgery.

Paige-Myatt's pain persisted after surgery, and she began an 18-month odyssey through numerous and exhaustive tests in search of its cause.  These tests, primarily focusing on her spine, showed what Paige-Myatt already knew: she had "diffuse sensory deficit," "neuropathic pain," and a "decreased area of sensitivity" around her femoral nerve.  According to Dr. Pantle-

Fisher, as late as March 1997, "The etiology of her pain at that point was never addressed or discussed, nor was any connection to the surgical procedure mentioned."

Discovery could have occurred on August 13, 1997, when, according to Paige-Myatt's sworn statement, Dr. Pantle-Fisher noted a possible link between her femoral nerve pain and "some surgical trauma."  Or discovery could have occurred on September 30, 1997, when, according to Dr. Pantle-Fisher's report, Paige-

Myatt received a confirmatory femoral nerve block.  In seeking the date of discovery, we recognize the exact moment of revelation is not always apparent.  

The trial court ignored this evidence, labeling Paige-

Myatt's discovery contentions "beyond incredulous" and charging Paige-Myatt failed to exercise reasonable diligence in determining the cause of her pain.  We disagree.  We cannot see how Paige-Myatt could have exercised more reasonable diligence beyond 18 months of inconclusive and, likely, frustrating tests.  She was addressing her pain, not consulting with lawyers.  If, as the record reveals, August 13, 1997, was the earliest discovery date, the limitations period did not run until August 13, 1999, well after the court's March 5, 1999, dismissal order.

Finally, both Mount Sinai and the trial court pointed to the affidavit Paige-Myatt's attorney provided with her complaint as evidence Paige-Myatt discovered the wrongful cause of her injury immediately after surgery.  In this affidavit, Paige-Myatt's attorney asserted the impending time bar of the limitations period prevented consultation with a physician under section 2-

622.  But neither Mount Sinai nor the trial court cited any authority, and we have found none, to support the proposition that this affidavit could dictate when Paige-Myatt discovered the wrongful cause of her injury, and consequently when the limitations period began running.  

A judicial admission is a "deliberate, clear, unequivocal" statement about a concrete fact within the party's knowledge.  
In re Estate of Rennick
, 181 Ill. 2d 395, 406, 692 N.E.2d 1150 (1998); 
Hack v. Multimedia Cablevision, Inc.
, 297 Ill. App. 3d 255, 257, 696 N.E.2d 694 (1998).  
This affidavit contains conclusory speculation about a matter of law.  See 
Franz v. Schneider
, 14 Ill. App. 2d 464, 468, 144 N.E.2d 798 (1957)(erroneous "admissions of law" are not binding).  It does not resemble a judicial admission.  

CONCLUSION

The trial court correctly dismissed Paige-Myatt's complaint against Mount Sinai under Rule 103(b).  But, based on the undisputed facts, Paige-Myatt did not discover the wrongful cause of her injury, and the limitations period did not begin running, until August 13, 1997, less than two years before the court's March 5, 1999, dismissal.  This dismissal should have been without prejudice.  
We reverse that part of the trial court's order dismissing the cause with prejudice, and we amend the trial court's order of dismissal to be without prejudice to the plaintiff's right to refile.

Affirmed in part; reversed in part and modified.

CAHILL, P.J., and CERDA, J., concur.